## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| PATRICK L. MCCRORY, in his official capacity as Governor of the State of North Carolina, and FRANK PERRY, in his official capacity as Secretary, North Carolina Department of Public Safety, | ) ) ) ) ) ) | |
| | ) | Case No. 5:16-cv-238-BO |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF JUSTICE, LORETTA E. LYNCH, in her official capacity as United States Attorney General, and VANITA GUPTA, in her official capacity as Principal Deputy Assistant Attorney General, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

On March 23, 2016, the State of North Carolina enacted North Carolina Session Law 2016-3, House Bill 2 ("H.B. 2"). Part I of H.B. 2 prohibits transgender people who do not possess an amended birth certificate from using the public facilities that match their gender identity. On May 4, 2016, the United States sent letters to Governor Patrick L. McCrory, Secretary of Public Safety Frank L. Perry, and the University of North Carolina, explaining that Part I of H.B. 2 violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and the Violence Against Women Reauthorization Act of 2013, 42 U.S.C. § 13925(b)(13) ("VAWA"). Those letters set a date certain—May 9, 2016—by which the United States

1

requested a reply; otherwise, the letters stated, the United States would seek judicial intervention to secure compliance with federal law. When that day arrived, Plaintiffs in this case, who knew they were about to be defendants in the United States' enforcement action, filed this lawsuit. Their two declaratory claims in this case are perfect mirror images of their defenses and counterclaims in the United States' pending lawsuit in the Middle District of North Carolina: The United States claims in its enforcement action that H.B. 2 violates Title VII, Title IX, and VAWA; conversely, Plaintiffs in this case claim that H.B. 2 *does not* violate Title VII or VAWA, and raise these identical claims as defenses and counterclaims in the United States' enforcement action. The only difference is that this declaratory action raises only a subset of the issues raised in the United States' enforcement action, which names additional defendants, seeks injunctive relief, and asserts that Part I of H.B. 2 violates Title IX. In addition, the other defendants in the enforcement action have raised defenses and counterclaims beyond the two declaratory claims in this case.

The Court should exercise its discretion to dismiss Plaintiffs' declaratory claims. This is a textbook case for doing so. Plaintiffs rushed to the courthouse on the eve of an enforcement action against them. Their declaratory claims assert nothing more than their anticipated defenses, which they have also raised—both as defenses and as counterclaims—in the enforcement action. And their declaratory claims raise only a *subset* of the issues in the United States' enforcement action, threatening a piecemeal resolution of the underlying controversy.

Pre-enforcement actions exist to clarify legal relations that will otherwise remain uncertain, not to give the subjects of enforcement actions a second forum in which to litigate their defenses, on a duplicative parallel track, when those defenses can just as easily be raised—and, here, have already been raised—in the enforcement action itself. Entertaining this lawsuit

would waste litigant and judicial resources, and it would risk inconsistent judgments, because all the parties to this action are also parties to the United States' enforcement action. Sound judicial administration requires that Plaintiffs' Complaint be dismissed.

## BACKGROUND

On March 23, 2016, the North Carolina legislature convened a special session for the purpose of enacting H.B. 2. Compl. ¶ 10. Part I of H.B. 2 mandates that "[p]ublic agencies shall require multiple occupancy bathrooms or changing facilities to be designed for and only used by individuals based on their biological sex." 2015 Bill Text NC H.B. 2B, § 1.3 (Mar. 23, 2016), *amending* N.C. Gen. Stat. § 115C-47. The statute defines "biological sex" as "[t]he physical condition of being male or female, which is stated on a person's birth certificate." *Id*. H.B. 2 further defines "public agencies" to include, among other entities, the state executive, judicial, and legislative branches, including the University of North Carolina system. *Id*. H.B. 2 passed both houses of the legislature on March 23, 2016, and Governor McCrory signed it the same day.

Following the enactment of H.B. 2, several North Carolina officials announced their intention to implement Part I. The President of the University of North Carolina issued a Memorandum on April 5, 2016, directing University Chancellors to comply with Part I's restrictions. *See* Margaret Spellings, *Guidance—Compliance with the Public Facilities Privacy & Security Act*, Apr. 5, 2016, Ex. 1.[1] She confirmed that the University would comply with H.B. 2 in a letter dated April 13, 2016. *See* Letter from Margaret Spellings, President, Univ. of N.C., to Vanita Gupta, Assistant Att'y Gen., Apr. 13, 2016, Ex. 2. Likewise, on April 12, 2016, Governor McCrory issued Executive Order 93, which affirmed that "every multiple occupancy restroom, locker room or shower facility located in a cabinet agency must be designated for and

---

[1] Because this is a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "may consider evidence outside the pleadings." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotations marks omitted). All such evidence has been attached as exhibits.

3

only used by persons based on their biological sex." Patrick L. McCrory, Governor, *To Protect Privacy and Equality*, Exec. Order 93, Apr. 12, 2016, Ex. 3.

In letters dated May 4, 2016, the United States notified Governor McCrory, Secretary Perry, and the University of North Carolina of its determination that, by complying with Part I of H.B. 2, they were not in compliance with Title VII, Title IX, or VAWA. *See* Compl., Introduction, § 14; *see* also Letter from from Vanita Gupta, Principal Deputy Assistant Att'y Gen., to Patrick L. McCrory, Governor, May 4, 2016; Letter from Vanita Gupta, Principal Deputy Assistant Att'y Gen., to Frank L. Perry, Secretary of Public Safety, May 4, 2016; Letter from from Vanita Gupta, Principal Deputy Assistant Att'y Gen., to Margaret Spellings, President, Univ. of N.C., May 4, 2016. The letters requested that the recipients immediately agree not to comply with the provisions of H.B. 2 that violated federal law and retract any statements to the contrary. The letters informed the recipients that the Attorney General may seek judicial intervention to remedy violations of Title VII, Title IX, and VAWA. The letters requested a response by May 9, 2016. *See* Compl. ¶ 14.

## PROCEDURAL HISTORY

The morning of May 9, 2016, Plaintiffs filed the instant lawsuit. *See* Complaint, ECF No. 1. Their Complaint seeks declaratory relief only. *See id.* at 4 ¶ 7, 8-9 ¶¶ 24-29. Specifically, they seek (1) a declaration that they are not violating Title VII by complying with Part I of H.B. 2, *id.* at 8 (Count One), and (2) a declaration that they are not violating VAWA by complying with Part I of H.B. 2, *id.* at 8-9 (Count Two); *see also id.* at 9 (Prayer for "Declaratory Relief").

The same day, the United States sued both Plaintiffs in this case, along with the State of North Carolina, the University of North Carolina, and the Board of Governors of the University

of North Carolina, in the Middle District of North Carolina. *See* Complaint, *United States v. North Carolina*, No. 1:16-cv-425 (M.D.N.C. *filed* May 9, 2016). The United States seeks declarations that compliance with Part I of H.B. 2 violates Title VII, Title IX, and VAWA, and an injunction to prevent such compliance. *Id.* at 12-13. Plaintiffs in this case filed their Answer in *United States* on June 2, 2016. *See* Answer, *United States v. North Carolina*, Dkt. No. 32. Their Answer includes a number of defenses, including that H.B. 2's bathroom provision does not violate Title VII, Title IX, or VAWA. *See id.* at 14-15 ("Fourth Defense"). The Answer also asserts two counterclaim for declarations that H.B. 2's bathroom provision does not violate Title VII or VAWA—the same two claims it has pleaded in this case. *See id.* at 21-22; *id.* at 26 ("[C]ounterclaim plaintiffs respectfully request a declaration that they are not violating Title VII by following state law regarding bathroom and changing facility use by state employees."); *id.* at 27 ("[C]ounterclaim plaintiffs respectfully request a declaration that they are not violating VAWA by following state law regarding bathroom and changing facility use."); *id.* at 27-28 ("Prayer for Relief").

After the United States filed its enforcement action, two more lawsuits were filed in this district. *See Berger v. Dep't of Justice*, No. 1:16-cv-844-TDS (M.D.N.C. *filed* May 9, 2016)[2]; *North Carolinians for Privacy v. Dep't of Justice*, No. 1:16-cv-845-TDS (M.D.N.C. *filed* May 10, 2016).[3] On June 29, 2016, the judge to whom those cases were assigned ordered them to be transferred *sua sponte* to the Middle District of North Carolina, where *United States* and a private challenge to H.B. 2, *Carcaño v. McCrory*, No. 1:16-cv-236-TDS (M.D.N.C. *filed* Mar. 28, 2016), were already pending. *See* Order, *North Carolinians for Privacy v. Dep't of Justice*,

---

[2] *Berger* was originally docketed in the Eastern District of North Carolina as 5:16-cv-240-FL, before being transferred to the Middle District of North Carolina.

[3] *North Carolinians for Privacy* was originally docketed in the Eastern District of North Carolina as 5:16-cv-245-FL, before being transferred to the Middle District of North Carolina.

No. 5:16-cv-245-FL, Dkt. No. 34 (E.D.N.C. June 29, 2016) (ordering transfer).  All four cases in

the Middle District are now assigned to the same judge.

In *Carcaño*, the plaintiffs filed a motion for preliminary injunction on May 16, 2016.  *See*

Dkt. No. 21.  That motion was fully briefed as of July 5, 2016.  *See* Dkt. No. 81 (UNC's

Surreply).  In *United States*, the United States filed a motion for preliminary injunction on July 6,

2016.  *See* Dkt. No. 74.  The judge in *Carcaño*, *United States*, *Berger*, and *North Carolinians for*

*Privacy* has not yet scheduled a hearing date for the two preliminary injunctions, but at a status

conference on July 1, 2016, he indicated that the hearing would likely take place in either July or

September.

## STANDARD OF REVIEW

The United States moves to dismiss under Rule 12(b)(1), which provide for dismissal

based on a "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "The nonmovant has

the burden to allege and prove such jurisdiction."  *North Jefferson Square Associates, L.P. v.*

*Virginia Housing Dev. Auth.*, 94 F. Supp. 2d 709, 714 (E.D. Va. 2000) (citing *Adams v. Bain*,

800 F.2d 393, 396 (4th Cir. 1986)).

> [F]or a district court to have jurisdiction to issue a declaratory judgment, two
> conditions must be satisfied.  First, the dispute must be a "case or controversy"
> within the confines of Article III of the United States Constitution—the
> "constitutional" inquiry.  Second, the trial court, in its discretion, must be satisfied
> that declaratory relief is appropriate—the "prudential" inquiry.

*White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990).  Even when

the first jurisdictional requirement is satisfied, "district courts are under no compulsion to

exercise jurisdiction over declaratory judgment action[s]."  *New Wellingon Fin. Corp. v.*

*Flagship Resort Dev. Corp.*, 416 F.3d 290, 296 (4th Cir. 2005) (quotation marks omitted).  And

while "district courts have great latitude in determining whether to assert jurisdiction over

declaratory judgment actions," they must exercise that discretion within the "outer boundaries" delineated by the court of appeals. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (per curiam).

## ARGUMENT

The Court should exercise its discretion to dismiss Plaintiffs' Complaint for declaratory relief, because Plaintiffs' claims are exact duplicates of their defenses to the United States' enforcement action, they reflect an improper "race to the courthouse," they would promote inefficient piecemeal resolution of the issues in this controversy, and they run the risk of creating inconsistent judgments. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interest party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see id.* at 287 (holding that a district court may "decline to hear a declaratory judgment suit at the outset" if doing so would be "a wasteful expenditure of judicial resources").

The Fourth Circuit and other courts of appeals have laid out several principles for guiding that discretion. A declaratory action "should not be used to deprive the real plaintiff of the choice of forum or to determine merely the 'validity of a defense' which would be asserted and could be determined in another action." *J.B. Hunt Transport, Inc. v. Innis*, 985 F.2d 553 (Table), at *2 (4th Cir. 1993); *see also Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, 785 F.3d 684, 697 (D.C. Cir. 2015) ("The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum

7

and timing, and it provokes a disorderly race to the courthouse.") (quotation marks omitted).

Instead, declaratory relief is appropriate where it "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna*, 139 F.3d at 422.

Declaratory relief serves those purposes when it is used to resolve a question that will not be fully resolved by a pending coercive action.[4] But "it is well settled that '[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.'" *Morgan Drexen*, 785 F.3d at 694 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967)).

Because the United States' enforcement action subsumes all the issues in Plaintiffs' Complaint and goes well beyond them, the instant lawsuit fails every applicable factor for determining whether to entertain a declaratory judgment action.

### A. Plaintiffs' Claims Are Exact Duplicates of Their Defenses in the Pending Enforcement Action

Both of Plaintiffs' declaratory claims are the same as their defenses to the United States' enforcement action. The United States claims that by enforcing H.B. 2, Plaintiffs are violating Title VII and VAWA. *See* Complaint, *United States v. North Carolina*, at 11-13. Plaintiffs here claim that by enforcing H.B. 2, they are *not* violating Title VII or VAWA. *See* Compl. 8-9. In *United States*, Governor McCrory and Secretary Perry have asserted the same two arguments, as both defenses and counterclaims, along with several other defenses. *See* Answer, *United States v. North Carolina*, Dkt. No. 32, at 14-15, 21-22, 26-28. Resolving the United States' claims for injunctive and declaratory relief will thus necessarily resolve Plaintiffs' claims for mirror-image declaratory relief that they seek in this case.

---

[4] A "coercive action," in this sense, means a lawsuit seeking monetary or injunctive relief, as opposed to purely declaratory relief.

In such circumstances, there is no clarifying purpose to be served by entertaining a wholly duplicative declaratory action. Just the opposite: adjudicating a party's defenses in two separate lawsuits is a waste of litigant and judicial resources. It also risks inconsistent rulings, which may impose incompatible duties on the parties. The Fourth Circuit has consistently held that declaratory relief is inappropriate where "all of the legal issues between the parties are subsumed within the second action, which was filed by [the declaratory judgment defendant] and remains pending in the district court. Avoiding piecemeal litigation provides a strong reason for declining to declare rights and relationships." *Settlers Crossing, LLC v. U.S. Home Corp.*, 383 Fed. App'x 286, 288 (4th Cir. 2010). The Fourth Circuit has further explained that "it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to try a controversy by piecemeal." *Id.* This is because "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks." *Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir. 1992).[5]

This factor supports dismissal of Plaintiffs' declaratory claims. *See, e.g.*, *Wilton*, 515 U.S. at 288 (explaining that district courts may dismiss a complaint when "a declaratory judgment will serve no useful purpose"); *Pitrolo v. Cty. of Buncombe*, 589 Fed. App'x 619, 629-

---

[5] In the related contexts of transfer and consolidation, this Court, as well as other courts in this Circuit, have repeatedly recognized that duplicative litigation wastes the parties' and the courts' resources, and raises the specter of inconsistent judgments. *See, e.g.*, ECF No. 36 ("These cases include common factual and legal issues and the risk of inconsistent judgment outweighs any potential prejudice to the parties."); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982) (explaining that, in deciding consolidation, a district court must weigh "the risk of inconsistent adjudications of common factual and legal issues" and "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits"); *United States ex rel. Advance Concrete, LLC v. T.H.R. Enterprises, Inc.*, 2016 WL 3002408, at *5 (E.D. Va. May 19, 2016) ("Because that case involves similar issues and parties, the Court finds that the interests of judicial economy and the avoidance of inconsistent judgments tilt in favor of transfer."); *Convergence Technologies, LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 642-43 (E.D. Va. 2010) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent.") (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

30 (4th Cir. 2014) (affirming refusal to entertain declaratory action for the sole reason that it would serve no clarifying purpose). There is no reason to let Plaintiffs litigate their defenses twice. "Numerous courts have refused to grant declaratory relief to a party who has come to the court only to assert an anticipated defense." *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 235 (C.D. Cal. 1992); *see id.* at 235-26 (collecting such cases from the Fourth, Fifth, Seventh, and D.C. Circuits). This Court should too.

**B. Plaintiffs' Declaratory Claims Raise Only a Subset of the Issues Raised in the Pending Enforcement Action**

"In deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy." *Mitcheson*, 955 F.2d at 239. This factor also weighs heavily in favor of dismissing Plaintiffs' complaint. In its enforcement action, the United States asserts that H.B. 2 violates three statutes: Title VII, VAWA, and Title IX. But in this declaratory action, Plaintiffs only seek declarations as to two: Title VII and VAWA. In *United States*, Plaintiffs have sought those same two declarations as counterclaims, along with a number of additional defenses not presented here. *See* Answer, *United States v. North Carolina*, Dkt. No. 32, at 13-21. Moreover, the enforcement action includes additional defendants—the State of North Carolina, the University of North Carolina, and the Board of Governors of the University of North Carolina— whose defenses will not be presented in the instant lawsuit. Finally, the United States has sought an injunction against compliance with Part I of H.B. 2, which cannot be resolved in Plaintiffs' declaratory lawsuit. Plaintiffs' claims thus would not resolve "all aspects of the legal controversy" between the United States and North Carolina. *Id.*

As the Fourth Circuit has put it, "it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be . . . to try particular issues

without settling the entire controversy." *Settlers Crossing*, 383 Fed. App'x at 288 (quoting *Mitcheson*, 955 F.2d at 239). In *American National Property and Causalty Co. v. Skiles*, 5 Fed. App'x 206 (4th Cir. 2001), the Fourth Circuit affirmed dismissal of a declaratory action on the ground that the "action would resolve only part of the controversy, because" the pending coercive action "contains two defendants and a number of issues not present in the [declaratory] action." *Id.* at 208; *see also Allied-General Nuclear Svcs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611-12 (4th Cir. 1982) (affirming dismissal where "a declaratory judgment might not settle the entire controversy"). Other circuits have uniformly held that avoiding piecemeal litigation presents a strong reason not to entertain an unnecessary declaratory action. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390 n.2 (5th Cir. 2003) (summarizing every circuit's list of factors); *see, e.g.*, *Reifer v. Westport Insurance Corp.*, 751 F.3d 129, 141 (3d Cir. 2014) ("[F]ederal courts should decline jurisdiction where doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.") (quotation marks omitted); *Sherwin-Williams Co.*, 343 F.3d at 391 ("A federal district court should avoid duplicative or piecemeal litigation where possible."). Accordingly, because resolution of Plaintiffs' two claims for declaratory relief will not resolve all aspects of the controversy between the parties, dismissal is appropriate.

### C. Plaintiffs' Lawsuit Constitutes Impermissible Procedural Fencing

The Fourth Circuit has been equally clear that a declaratory action should not be entertained when it is the product of an unseemly race to the courthouse. "It has long been established that courts look with disfavor upon races to the courthouse . . . . Such procedural fencing is a factor that counsels against exercising jurisdiction over a declaratory judgment action." *Learning Network, Inc. v. Discovery Comm'cs*, 11 Fed. App'x 297, 301 (4th Cir. 2001); *see also Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, 785 F.3d 684, 697-98 (D.C.

11

Cir. 2015) (affirming that a declaratory judgment plaintiff had engaged in "procedural fencing" when it filed its anticipated defenses "on the eve of enforcement").

This is exactly what Plaintiffs did in this case. Knowing that an enforcement action was imminent, they rushed into court to assert two of their anticipated defenses as declaratory claims. Plaintiffs acknowledge as much. *See* Compl. ¶¶ 14-17. That is not an appropriate occasion for declaratory relief. Declaratory judgments are meant to obviate the prospect of ongoing uncertainty. *See Aetna*, 139 F.3d at 422. They are not meant to allow parties to file anticipated defenses hours before they know they will be sued. This Court should follow the Fourth Circuit's clear instruction to dismiss such cases, lest other plaintiffs engage in similar procedural fencing. "Courts should not become unwitting or hapless partners in that unseemly tribal rite." *Rowan Companies, Inc. v. Blanton,* 764 F. Supp. 1090, 1092 (E.D. La. 1991).

Nor does the fact that Plaintiffs filed their Complaint hours before the United States make declaratory relief any more appropriate. "[T]he real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." *Morgan Drexen*, 785 F.3d at 697 (quoting 10B Charles Alan Wright, et al., Federal Practice and Procedure, § 2758, at 530-31 (3d ed. 2013)) (dismissing declaratory claims after an enforcement action was filed one month later); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) ("Normally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a *subsequently*-filed coercive action by the 'natural plaintiff.'") (emphasis added); *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (upholding dismissal of declaratory action after enforcement action was subsequently

12

filed, explaining that, because of the now-pending enforcement action, "a declaratory judgment would serve no useful purpose").

Accordingly, the first-to-file rule has no purchase in this context. At the outset, the first lawsuit against Governor McCrory concerning the validity of H.B. 2—*Carcaño*—was filed weeks before *McCrory*, and the United States' enforcement action was filed on the very same day as *McCrory*. Regardless, "[t]he most basic aspect of the first to file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). Courts frequently decline to defer to the first-filed action, not only when that action merely asserts anticipated defenses, but also when subsequent actions have progressed further than the first-filed action. *See, e.g.*, *Wenzel v. Knight*, 2015 WL 222179, at *6 (E.D. Va. Jan. 14, 2015) (departing from first-filed rule); *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) ("[E]xceptions to the [first-filed] rule are common 'when justice or expediency requires.'") (quoting *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993)); *Affinity Memory & Micro, Inc. v. K&Q Enter., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) ("[T]he first-filed rule is not to be applied mechanically; for example, courts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial."). Here, the other four of five cases pertaining to H.B. 2 are in the Middle District of North Carolina, two of those cases have preliminary injunction motions filed, and one of those preliminary injunctions is fully briefed. Both justice and expediency warrant dismissal of Plaintiffs' declaratory judgment action in this Court, which merely asserts two of the defenses raised by Plaintiffs in the Middle District cases.

**D. Plaintiffs Will Suffer No Prejudice from Having to Litigate Their Defenses in One Court Only**

Plaintiffs have a perfectly adequate venue in which to litigate their defenses to the United States' enforcement action: the enforcement action itself. In fact, in their Answer in *United States*, they have done just that. *See* Answer, *United States v. North Carolina*, Dkt. No. 32, at 14-15, 21-22, 26-28. They do not need a second venue in which to adjudicate the exact same questions. As numerous courts have recognized, a party in Plaintiffs' situation "almost by definition [has] an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motions in the court in which he files his papers." *NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985); *see Parke, Davis & Co. v. Califano*, 564 F.2d 1200, 1206 (6th Cir. 1977) ("[P]ending enforcement actions provided an opportunity for a full hearing before a court.").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

JENNIFER D. RICKETTS
Director
Federal Programs Branch

JOSHUA E. GARDNER
Assistant Director
Federal Programs Branch

/s/ Spencer E. Amdur
SPENCER E. AMDUR
(Pennsylvania Bar # 322007)
Trial Attorney
Federal Programs Branch

14

U.S. Department of Justice
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-7420
Facsimile: (202) 616-8460
spencer.amdur@usdoj.gov

July 12, 2016                          *Attorneys for Defendants*

15